UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                Case No. 21-CR-70

JEFFREY COLEMAN, et al.,

    Defendants.

## ORDERS AND RECOMMENDATION

1. **Background**

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed …." U.S. Const. Amend. VI. This provision encompasses a right to a jury pool that is reasonably representative of a fair cross section of the relevant community. *Duren v. Missouri*, 439 U.S. 357, 358-59 (1979) (discussing *Taylor* v. *Louisiana*, 419 U.S. 522 (1975)); *Berghuis v. Smith*, 559 U.S. 314, 319 (2010) ("The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community."). The fair cross section requirement is a means for ensuring impartial juries; "there is no requirement that a

venire or a jury mirror the general population." *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999).

> To make a prima facie showing that the fair cross-section requirement has been violated, a defendant must show that: (1) the group allegedly excluded is a distinctive group in the community, (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (citing *Duren*, 439 U.S. at 364 (1979); *United States v. Neighbors*, 590 F.3d 485, 491 (7th Cir. 2009)); *see also Berghuis*, 559 U.S. at 327. "If the defendant establishes these elements, the government must show that those aspects of the jury selection process which result in the disproportionate exclusion of a distinctive group manifestly advance an overriding, significant government interest." *Raszkiewicz*, 169 F.3d at 463.

Codifying and expanding on the protections afforded under the Sixth Amendment, in 1968 Congress enacted the Jury Selection and Service Act of 1968, Pub. L. 90-274, 82 Stat. 54, which states that

> [i]t is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

28 U.S.C. § 1861. Under the Act, courts must "specify whether the names of prospective jurors shall be selected from the voter registration lists or lists of actual voters of the political subdivisions within the district or division." 28 U.S.C. § 1863(b)(2). This list then may be supplemented with some other source "where necessary to foster the policy and protect the rights secured" under the Act. 28 U.S.C. § 1863(b)(2). To sustain a claim under the Jury Selection and Service Act of 1968 the motion must contain "a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of" the Act. 28 U.S.C. § 1867(d).

Pursuant to the Jury Selection and Service Act, this district in 2017 adopted a revised jury plan detailing the selection of grand and petit jurors in the district. *See* Jury Plan (E.D. Wis.) available at https://www.wied.uscourts.gov/sites/wied/files/documents/JuryPlan2017.pdf (last visited Sept. 7, 2021). Under the plan the primary source list for prospective jurors is "voter records." Jury Plan, § 4.

> When necessary and for the purposes of improving representation of racial minorities, young persons, or other potentially underrepresented groups the court may supplement the voter records, as permitted by 28 U.S.C. §1863(b)(2). The supplemental source list may be a combination of data maintained or collected by Wisconsin Department of Transportation, which includes driver's license records and state issued identification cards.

Jury Plan, § 4.

Jeffrey Coleman argues that the district's jury plan violates the Fifth and Sixth Amendments and the Jury Selection and Service Act because it results in an

3
Case 2:21-cr-00070-LA    Filed 09/07/21    Page 3 of 11    Document 58

underrepresentation of non-white prospective jurors. (ECF No. 33.) He "moves the Court for an order dismissing the indictment without prejudice and suspending operation of this district's Jury Plan, so far as it relates to assembling a master jury wheel, a qualified panel, or pools for grand juries and petit juries." (ECF No. 33 at 1.) Coleman's co-defendant, Dwight Clayton, seeks to join Coleman's motion. (ECF No. 45.) The court will grant Clayton's request as unopposed.

According to Coleman, relying on actual voter data as opposed to registered voter data, combined with legislative actions in Wisconsin that have made it disproportionately harder for non-white populations to vote, have resulted in an under-representation of non-whites in the pool from which the court draws prospective jurors. (ECF No. 34 at 31.) This disparity is compounded by the fact that, when choosing prospective jurors, the court draws from counties in proportion to the rate at which that county contributed to the overall number of ballots cast in the division rather than on the percentage of the division's voting age population residing in that county. The result is that counties with high voter turnout (which tend to be both more affluent and with larger white populations) are disproportionately represented in the pool of prospective jurors.

Extrapolating from public and court data, Coleman proffers the opinion of a political science professor who states that non-whites are under-represented in the Milwaukee Division's jury pool by 7.3 to 8.4 percent when compared to the voting age

4

population. (ECF No. 33 at 6.) Coleman points to three features of the court's plan that lead to the alleged under-representation of non-whites. In addition to the court's reliance on actual rather than registered voters, he points to the "opt-out provision for single parents"[1] and the measures that persons without internet access must go through to be able to serve as jurors[2]. (ECF No. 33 at 2-3.) Coleman requests an evidentiary hearing so that he may be able to establish the facts he proffers in support of his motion. (ECF No. 34 at 26-33.)

The government asks the court to deny the motion without an evidentiary hearing. (ECF No. 48.) It notes that Coleman's motion is a reprise of a motion that his counsel filed in a prior action and argues that Coleman has failed to establish a prima facie case under *Duren*. (ECF No. 48 at 3); *United States v. Sonag, Co.*, Case No. 18-CR-62, "Defendant's Motion to Strike Jury Venire and Request for Evidentiary Hearing," ECF No. 104 (E.D. Wis., Jan. 24, 2019). Magistrate Judge David Jones denied the motion in *Sonag*, *id.*, ECF No. 116 (March 12, 2019), and Chief Judge Pamela Pepper rejected Sonag's objections, affirming Judge Jones's decision, *id.*, ECF No. 194 (June 14, 2019).

---

[1] The Jury Plan allows a prospective juror to request to be excused from jury service if the person "has active care and custody of a child or children under 10 years of age whose health and/or safety would be jeopardized by their absence for jury service, or a person who is essential to the care of aged or infirm persons." Plan § 9(3). The Supreme Court has said, "We recognize that a State may have an important interest in assuring that those members of the family responsible for the care of children are available to do so. An exemption appropriately tailored to this interest would, we think, survive a fair-cross-section challenge." *Duren*, 439 U.S. at 370.

[2] After prospective jurors are notified by mail of their selection, the prospective jurors have the option of completing the juror questionnaire through a website or calling the court to request a paper questionnaire, which the prospective juror must then mail back to the court.

2. Analysis

With respect to the first *Duren* factor, that the group allegedly excluded is a distinctive group in the community, as Judge Jones noted courts around the country have rejected the notion that non-white populations may be lumped together under the broad category of "minorities" or that all non-whites are a distinctive group. *Sonag*, 18-CR-62, ECF No. 116 at 7-8 (citing *Prince v. Parke*, 907 F. Supp. 1243, 1247 (N.D. Ind. 1995) ("This court does not understand the requirement of a distinctive group under *Duren* to allow various groups to be 'lumped' together into one distinctive group called 'minorities.'"); *United States v. Luong*, 255 F. Supp. 2d 1123, 1127 (E.D. Cal. 2003) ("[T]he Ninth Circuit has rejected the theory that all non-white groups can be combined to form a single 'distinctive' group for the purpose of a jury selection challenge."); *United States v. Purdy*, 946 F. Supp. 1094, 1100 (D. Ct. 1996) (declining to combine Blacks and Hispanics into a single group); *Ahmed v. Houk*, Case No. 2:07-cv-658, 2014 U.S. Dist. LEXIS 81971, at *308 (S.D. Ohio June 16, 2014) ("'Non-whites' has never been recognized as a 'distinctive group' in the community."); *cf. United States v. Alanis*, 265 F.3d 576, 583 (7th Cir. 2001) (noting that "[t]e district court found that, even if Blacks and Hispanics could be combined as one group, Alanis failed to demonstrate the existence of the second and third elements," and affirming because defendant failed to introduce evidence of Black and Hispanic representation in the community).

Even if all non-whites could be combined to be "a distinctive group in the community" under the first prong of *Duren*, Coleman's proffered evidence would not satisfy the second *Duren* prong—that "the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community." The Supreme Court does not specify any "method or test courts must use to measure the representation of distinctive groups in jury pools," *Berghuis*, 559 U.S. at 329. Thus, lower courts are free to adopt different measures to gauge whether its plans are representative.

The Court of Appeals for the Seventh Circuit has concluded that a jury plan is representative provided that under the comparative disparity method it does not result in a deviation of more than ten percentage points between a distinct group's representation in the community and that group's representation among prospective jurors. *United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001) (quoting *United States v. Ashley*, 54 F.3d 311, 314 (7th Cir. 1995)). In *Berghuis v. Smith*, 559 U.S. 314, the Court stated it "need not reach [the] issue" of whether a bright-line 10 percentage point rule was appropriate, *id.* at 334, n. 4, thus leaving undisturbed the Seventh Circuit precedent. Coleman proffers to show a disparity of, at best, 8.4 percentage points. Such a deviation is insufficient to demonstrate unfair or unreasonable representation. *Phillips*, 239 F.3d at 842.

Setting aside the Seventh Circuit's ten percentage point rule, Coleman's figures rely, to some degree, on a comparison of apples to oranges. Coleman is comparing "voting-age citizens of the Milwaukee Division who are members of racial minority groups or Hispanic" with persons "selected from the voter registration files and … empaneled [as] jurors." (ECF No. 33-1 at 2.) Coleman fails to account for factors that may render voting age persons ineligible for jury service, such as lack of citizenship, lack of English proficiency, or having been convicted of a felony and not having their civil rights restored. *See* 28 U.S.C. § 1865(b). Thus, even independent of the Seventh Circuit's ten percentage point rule, the proffered data fails to show that the composition of jury panels in this district is unfair and unreasonable in relation to the number of non-white persons in the community. *Cf. Berghuis*, 559 U.S. at 321 ("[t]he fair-cross-section principle must have much leeway in application" (quoting *Taylor*, 419 U.S. at 537-38 (1975)); *Swain v. Alabama*, 380 U.S. 202, 208 (1965) ("Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.").

Given Coleman's failure to proffer evidence that could establish the first two *Duren* factors, it is unnecessary to consider whether the alleged underrepresentation is due to systematic exclusion of the group in the jury selection process. And, in any event, many of the facts relevant to that analysis, including explanations as to why this district

8
Case 2:21-cr-00070-LA    Filed 09/07/21    Page 8 of 11    Document 58

relies on records of actual rather than registered voters, are not presently before the court.

Insofar as Coleman is alleging that the court's reliance on data of actual voters evidences purposeful discrimination in violation of the Fifth Amendment, the Jury Selection and Service Act explicitly authorizes the use of lists of actual voters as the primary source for identifying prospective jurors. 28 U.S.C. § 1863(b)(2).

### 3. Conclusion

An evidentiary hearing is unnecessary to resolve Coleman's motion. Even if Coleman were able to prove his proffered facts, they would not show a substantial failure to comply with the Jury Selection and Service Act. Nor would they present prima facie evidence that the jury plan in this district results in panels or juries that are not reasonably representative of the community.

The court recognizes and appreciates that reliance on voter registration records and different allocation methods may mitigate certain of the disparities suggested in the data presented by Coleman. However, the issue before the court is not whether this district has a perfect plan or even whether a better plan might be implemented. Rather, the question is whether there exists a systemic defect that results in a disparity so great as to offend the Constitution or the Jury Selection and Service Act of 1968. Coleman's proffered facts do not to suggest such a failure. Therefore, for the reasons set forth here and in Judge Jones's decision denying a materially identical motion, *see United States v.*

*Sonag, Co.*, Case No. 18-CR-62, ECF No. 116 (March 12, 2019), the court must deny Coleman's motion for an evidentiary hearing and recommend that his motion to dismiss be denied.

**IT IS THEREFORE ORDERED** that Dwight Clayton's motion (ECF No. 45) to join and adopt Jeffrey Coleman's "Motion to Dismiss Indictment Without Prejudice, Strike Master Jury Wheel and Qualified Panel, and Suspend Jury Plan" (ECF No. 33) is **granted**.

**IT IS FURTHER ORDERED** that Jeffrey Coleman's request for an evidentiary hearing regarding his "Motion to Dismiss Indictment Without Prejudice, Strike Master Jury Wheel and Qualified Panel, and Suspend Jury Plan" (ECF No. 33) is **denied**.

**IT IS FURTHER RECOMMENDED** that Jeffrey Coleman's "Motion to Dismiss Indictment Without Prejudice, Strike Master Jury Wheel and Qualified Panel, and Suspend Jury Plan" (ECF No. 33) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final Pretrial Conference, whichever is earlier. Failure to file a timely objection with the

district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 7th day of September, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge